David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Eric Steinmetz, and all similarly situated individuals,<br><br>      Plaintiffs,<br> v.<br><br>Brinker International, Inc. d/b/a Chili's Grill & Bar,<br><br>      Defendant. | : Civil Action No.:<br>:<br>: **COMPLAINT FOR DAMAGES**<br>: **PURSUANT TO THE FAIR CREDIT**<br>: **REPORTING ACT, 15 U.S.C. § 1681, ET**<br>: **SEQ. AND FOR RELIEF UNDER THE**<br>: **DECLARATORY JUDGMENT ACT, 15**<br>: **U.S.C. § 2201, AND FOR DAMAGES AND**<br>: **EQUITABLE RELIEF UNDER NEVADA**<br>: **LAW**<br>:<br>: **JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because this case arises out of violation of

1

federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").  28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.  This Court has supplemental jurisdiction to hear all state law claims under Nevada state law pursuant to 28 U.S.C. § 1367.

3.  This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative class members, and at least some members of the proposed Class have different citizenship than Chili's.

4.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of the County of Clark, State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

5.  Plaintiff Eric Steinmetz ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.

6.  Plaintiff and all putative Class and Subclass members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).  Additionally, Plaintiff and members of the Nevada Subclass are "persons" as used in NRS 598 and NRS 41.600.

7.    Defendant Brinker International, Inc. d/b/a Chili's Grill & Bar ("Chili's" or "Defendant")) is a corporation incorporated under the laws of Delaware with its principal place of business in Dallas, Texas.  Chili's conducts business in the State of Nevada.

8.    Chili's regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Chili's is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).  Additionally, Chili's is a "person" as used in NRS 598 and NRS 41.600, and "Data Collector" as used in NRS 603A.030.

## FACTUAL ALLEGATIONS

### *Chili's Permits the PII of Numerous Consumers to Be Obtained by Identity Thieves.*

9.    On information and belief, Chili's serves as a chain of restaurants, with nearly 1,600 United States locations.  Chili's routinely processes consumer transactions through point-of-sale ("POS") systems which capture personally identifiable information, including names, credit card numbers, card expiration dates, and three-digit security codes located on the back of their credit cards (collectively referred to as "PII").

10.   On May 11, 2018, Chili's became aware that payment card data had been stolen by hackers between April and May 2018.[1]  According to a May 18, 2018 Chili's press release, Chili's stated that it "based on the details currently uncovered, we believe that malware was used to gather payment card information including credit or debit card

---

[1] *See* Alix Langone, *Chili's Is the Latest Place to Be Hit With a Data Breach.  Here's What Your Should Know*, Time, May 14, 2018, available at http://time.com/money/5276047/chilis-data-breach-2018/ (last visited May 23, 2018).

numbers and cardholder names, and potentially expiration dates and CVV codes from our payment-related systems for in-restaurant purchases at certain Chili's restaurants."[2] Upon information and belief, when Chili's discovered this breach, they began conducting an internal investigation, and engaged third party forensic experts and law enforcement.[3]

11.    For the Plaintiff, as with all potential Class members, they had no notification before May 12, 2018 that their information secured by Chili's had been compromised.

12.    On April 4, 2018, Plaintiff purchased goods from a Chili's location in Las Vegas, Nevada, using a Wells Fargo Visa debit card.  Chili's, as applicable, processed Plaintiff's consumer transaction with its compromised POS system.  Thus, Plaintiff either was or was highly likely to have been implicated in the data breach.

13.    After learning of the Data Breach, Plaintiff cancelled the card used complete the transaction and requested a new card – an action Plaintiff would not have to take had Plaintiff's personal information not been likely compromised.  Plaintiff also called the Chili's location at which he had shopped as well as the Chili's national office, seeking answers regarding the Data Breach, but was told by the national office that there was no time-frame by which any answers could be provided, as they were still in the process of investigating the Data Breach.

14.    Concerned that he was unable to obtain definitive answers from Chili's regarding the Data Breach, Plaintiff procured his consumer disclosures from CRAs Experian

---

[2] *See* Brinker International, Inc., *Notice of Unauthorized Access to or Acquisition of Chili's Grill & Bar Guest Data*, available at   http://brinker.mediaroom.com/ChilisDataIncident (last visited May 23, 2018).
[3] *See id.*

Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion, LLC.

15. Consequently, Plaintiff lost time dealing with issues related to the Chili's data breach in cancelling his debit card, speaking on the phone to Chili's representatives regarding the Data Breach, and in procuring and considering his disclosures to determine if any fraudulent activity was present.  Plaintiff also incurred transportation costs in the form of gasoline in driving to Wells Fargo to cancel his debit card and obtain a temporary card.

16. In light of these numerous inconveniences, Plaintiff would not have used his debit card to make purchases at Chili's – indeed, he would not have shopped at Chili's at all during the period of the data breach – had Chili's told him that it lacked adequate safeguards and data security practices to safeguard customers' personal and financial information from theft.

17. Plaintiff has a continuing interest in ensuring that his private information, which remains in the possession of Chili's, is protected and safeguarded from future breaches.  Plaintiff suffered actual injury from having his personal information compromised and/or stolen as a result of the data breach.  Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his personal and financial identity information – a form of intangible property that Plaintiff entrusted to Chili's for the purpose of making purchases at Chili's and which was compromised in and as a result of the data breach.

18. Plaintiff also suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by his personal and financial information being placed in the hands of criminals who may have already

5

misused such information stolen in the data breach via sale of Plaintiff and Class members' personal and financial information on the Internet black market.

19.    Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Chili's in the protection and safekeeping of Plaintiff and Class members' personal information.  Chili's' failures to safeguard consumer PII has caused Plaintiff and Class members damages.

### Chili's' Conduct Violated the FCRA.

20.    The United States Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to insure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy.  The FCRA imposes duties on the CRA's to protect consumer's sensitive personal information.

21.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information.   Through these protections, Congress recognized a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

22.    Central to the FCRA's privacy protections are restrictions on consumer reporting agencies, or CRAs.  A CRA is a person or entity "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose

of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

23. Chili's is a "consumer reporting agency" ("CRA") within the cognizance of 15 U.S.C. § 1681a(f) because it utilizes a point-of-sale system in which it obtains, evaluates, and/or assembles a consumer's PII in commercial transactions, and directs that PII to be transmitted through a third party credit card processing company and, ultimately, to a financial institution, who then authorizes payment from a consumer's account back to Chili's.

24. A central duty that the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.  15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."  To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes.  15 U.S.C. § 1681e(a).

25. The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this

title."  15 U.S.C. § 1681a(d).  Under this broad definition, a consumer's PII qualifies as a "consumer report."

26.    On information and belief Chili's accepts consumer payment for its goods via payment cards issued by members of the payment card industry ("PCI"), such as Visa and MasterCard.

27.    Some PCI members founded the PCI Security Standards Council, which developed a Data Security Standard ("DSS") applicable to all merchants that store, process, or transmit cardholder data.  In 2009 a Visa official remarked that, "no compromised entity has yet been found to be in compliance with PCI DSS at the time of a breach."[4]

28.    PCI members that allow Chili's to process payments through their networks impose several requirements, including the requirement that Chili's fully comply with all of the DSS requirements and individual PCI members' requirements as a condition of being able to process transactions through the PCI members' networks.

29.    On information and belief, Chili's' failure to protect consumer data from a data breach arose in part from its failure to follow the industry accepted PCI standards.  Chili's' actions in designing, implementing, using and/or ratifying the use of the POS system were thus not commercially reasonable insofar as Chili's willfully, or at least negligently, failed to enact reasonable procedures to ensure that the consumer reports accessed through its POS system would only be accessed for a permissible purpose, when in fact

_____

[4] Jaikumar Vijayan, *Post-Breach Criticism of PCI Security Standard Misplaced, Via Exec Says*, Computerworld, Mar. 19, 2009, available at: https://www.computerworld.com/article/2531828/security0/post-breach-criticism-of-pci-security-standard-misplaced--visa-exec-says.html.

they were accessed by data thieves.

30.   Chili's failed to properly safeguard the information of Plaintiff and Class members, as required under 15 U.S.C. § 1681e(a).   Chili's failed to take the necessary precautions required to safeguard and protect Plaintiff and Class members' PII from unauthorized disclosure, as their PII was improperly handled and stored.   Therefore, on information and belief the PII of Plaintiff and Class members was accessed by data thieves and stolen.

### *Chili's' Conduct Violated NRS 5603A, 98 and NRS 41.600.*

31.   In April 2018, Plaintiff purchased goods from a Chili's location in North Las Vegas, Nevada, using a Wells Fargo debit card.   Chili's processed Plaintiff's consumer transaction with its compromised POS system.   Thus, Plaintiff either was or was highly likely to have been implicated in the data breach.

32.   Plaintiff and Subclass 1 members paid Chili's not only for the goods purchased at their locations, but also for, *inter alia*, the protection of their PII.   In so doing, they impliedly relied on Chili's' promise to keep their PII safe from unauthorized disclosure.

33.   Had Plaintiff and Subclass 1 members known of Chili's' inability to adequately protect PII from unauthorized disclosure, they would have paid substantially less for Chili's' goods, or would have likely "voted with their feet" by purchasing the same goods from another similar seller.

34.   However, because Chili's failed to protect Plaintiff and Subcass 1 members' PII, they did not receive the entirety of the goods they paid for, and correspondingly paid more than they would have otherwise for these goods.

9

35.   Thus, Chili's' conduct also violated NRS 598.0917(7) because it constituted a tender of "goods advertised for sale . . . or tendering terms of sale or lease less favorable than the terms advertised," i.e., goods offered for sale by credit card without the corresponding promise that a consumer's PII would be kept reasonably safe from harm.

36.   Chili's also breached its duty under NRS 603A.210, which requires any data collector "that maintains records which contain personal information" of Nevada residents to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, . . . use, modification or disclosure."  Chili's did not take such reasonable security measures, as shown by a system-wide breach of payment processing systems.

37.   Chili's also breached its duty under NRS 603A.215, which requires any data collector doing business in Nevada who accept payment cards in connection with a sale of goods or services to "comply with the current version of the . . . PCI Security Standards Council . . . with respect to those transactions."  On information and belief, Chili's failed to adhere to PCI standards, and was grossly negligent because the violation occurred in multiple stores across the United States.

38.   Additionally, NRS 598.0923(3) provides that a violation of any federal or Nevada law constitutes consumer fraud.  Defendant's violations of 15 U.S.C. § 1681e(a), NRS 598.0917(7), and NRS 603A as outlined above, also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3).

39.   Chili's' violations of NRS and 598.0923(3), 598.0917(7), and NRS 603A in turn

constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

### *Chili's Breached the Duty of Care They Owed to Their Invitees.*

40. Chili's routinely engage in commercial transactions in which members of the public, like Plaintiff and Subclass 2 members, are invited to its business premises to purchase goods.

41. Because Plaintiff and Subclass 2 members were invitees of Chili's, it owed its customers a duty of care to inspect for and discover unknown dangers, as well as to notify Plaintiff and Subclass 2 members of the same.

42. On information and belief, Chili's breached this duty by using a POS system which carried an unreasonable risk that consumer PII would be accessed and stolen, and this risk was never disclosed to Plaintiff and Subclass 2 members.

### *Chili's Conduct Violated 15 U.S.C. § 45 and NRS 603A, which constitutes negligence per se.*

43. Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Chili's had a duty to provide fair and adequate computer systems and data security to safeguard the personal information of Plaintiff and Subclass 3 members.

44. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Chili's, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also form part of the basis of Chili's' duty in this regard.

45. Chili's solicited, gathered, and stored personal information, of Plaintiff and the Subclass 3 members to facilitate sales transactions which affect commerce.

11

46.     Chili's violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiff and Subclass 3 members and not complying with applicable industry standards, as described herein.

47.     Chili's' violation of the FTCA constitutes negligence *per se*.

48.     Plaintiff and Subclass 3 members are within the class of persons that the FTC Act was intended to protect.

49.     The harm that occurred as a result of the May 2018 data breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Subclass 3 members.

50.     As a direct and proximate result of Chili's' negligence *per se*, Plaintiff and Subclass 3 members have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending.

51. On information and belief, Chili's uses the same computer systems and security practices in all states in which there are Chili's restaurants.

52. Additionally, according to NRS 603A.210, Chili's had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and Subclass 3 members' personal information.

53. Chili's breached its duties to Plaintiff and Subclass 3 members under NRS 603A by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class' personal information.

54. Chili's violation of the FTCA constitutes negligence *per se*.

### Chili's Breached the Implied Contract It Had With Plaintiff and Subclass 4 Members.

55. When Plaintiff and Subclass 4 members provided their personal information to Chili's in making purchases at Chili's restaurants, they entered into implied contracts by which Chili's agreed to protect their personal information and timely notify them in the event of a data breach.

56. Chili's invited its customers, including Plaintiff and the Subclass 4 members, to make purchases at Chili's restaurants using payment cards in order to increase sales by making purchases more convenient.

57. An implicit part of the offer was that Chili's would safeguard the personal information using reasonable or industry-standard means and would timely notify Plaintiff and Subclass 4 members in the event of a data breach.

58. Chili's also affirmatively represented that it collected and protected the personal

information of Plaintiff and the Subclass 4 members using "industry standard means."

59.     Based on the implicit understanding and also on Chili's' representations, Plaintiff and Subclass 4 members accepted the offers and provided Chili's with their personal information by using their payment cards in connection with purchases at Chili's restaurants during the period of the data breach.

60.     Plaintiff and Subclass 4 members would not have provided their personal information to Chili's had they known that Chili's would not safeguard their personal information as promised or provide timely notice of a data breach.

61.     Plaintiff and Subclass 4 members fully performed their obligations under the implied contracts with Chili's.

62.     Chili's breached the implied contracts by failing to safeguard Plaintiff and Subclass 4 members' personal information and failing to provide them with timely and accurate notice when their personal information was compromised in the data breach.

63.     The losses and damages Plaintiff and Subclass 4 members sustained (as described above) were the direct and proximate result of Chili's' breaches of its implied contracts with them.

### *Chili's Was Unjustly Enriched by Plaintiff and Subclass 5 Members.*

64.     Plaintiff and Subclass 5 members conferred a monetary benefit on Chili's. Specifically, they made purchases from Chili's and provided Chili's with their personal information by using their payment cards for the purchases that they would not have made if they had known that Chili's did not provide adequate protection of their personal information.

14

65.　　Chili's knew that Plaintiff and Subclass 5 members conferred a benefit on Chili's. Chili's profited from their purchases and used their personal information for its own business purposes.

66.　　Chili's failed to secure the Plaintiff and Subclass 5 members' personal information, and, therefore, was unjustly enriched by the purchases made by Plaintiff and the Class that they would not have made had they known that Chili's did not keep their personal information secure.

67.　　Plaintiff and the Subclass 5 members have no adequate remedy at law.

68.　　Under the circumstances, it would be unjust for Chili's to be permitted to retain any of the benefits that Plaintiff and Subclass 5 members conferred on it.

69.　　Chili's should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and Subclass 5 members proceeds that it unjustly received from them. In the alternative, Chili's should be compelled to refund the amounts that Plaintiff and Subclass 5 members overpaid.

***Harms Suffered by Plaintiff, Class, and Subclass Members as a Result of the Data Breach.***

70.　　By failing to establish reasonable procedures to safeguard individual consumer's private information, Chili's deprived consumers nationwide from a benefit conferred on them by Congress under 15 U.S.C. § 1681e(a), which, now lost, cannot be reclaimed.  Similarly, Chili's deprived Nevada Subclass 1, 3 consumers of a benefit conferred on them by the Congress in 15 U.S.C. § 45, and the Nevada legislature in NRS 603A, NRS 598, and NRS 41.600, which have also been irreparably lost.

71.   The harm to Plaintiff and Class, and all Subclass members occurred beginning at the time
the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of
private credit information causes harm in and of itself.

72.   Moreover, there is a high likelihood that significant identity theft and fraud has not yet
been discovered or reported, and that Plaintiff, Class, and Subclass members' PII will be
offered for sale or actually sold in "dark web" marketplaces.  This will result in ongoing
harm to Plaintiff and members of the Class and Subclasses as data thieves invariably seek
to utilize the PII, or seek to re-sell it.  Thus, Chili's' wrongful disclosure of Plaintiff,
Class, and Subclass members' PII placed them in an imminent, immediate, and
continuing risk of harm for identity theft and identity fraud, which is ongoing.

73.   Plaintiff, Class, and Subclass members have additionally been harmed as they have (1)
been forced to take steps to protect against unauthorized disclosures of their PII, (2)
incurred, intend to incur, and/or considered incurring the cost of obtaining replacement
credit cards, and (3) overpaid for Chili's' goods insofar as a portion of the purchase price
was premised on Chili's' implied promise to maintain the security and privacy of their
PII.

74.   On information and belief, Chili's conduct in failing to implement reasonable procedures
designed to prevent the furnishing of consumer reports was willful.  Plaintiff and Class
members are accordingly entitled to statutory damages pursuant to 15 U.S.C. § 1681n.

75.   Additionally, Chili's failure to conform its conduct to the duties imposed on it by NRS
603A, 15 U.S.C. § 45, and Nevada common law were on information and belief willful,

entitling Plaintiff and Subclass 2 and 3 members to punitive damages.

76.     Plaintiff and Subclass 5 members were harmed because they overpaid for Chili's' goods.

77.     Plaintiff, Class, and all Subclass members have also been obligated to retain an attorney

        to prosecute this case, and are entitled to an award of reasonable attorney's fees and

        costs.

## CLASS ALLEGATIONS

78.     Plaintiff brings this action pursuant to 15 U.S.C. § 1681e(a), on behalf of a nationwide

        class of all similarly situated individuals ("Class 1"), defined as:

        All persons in the United States for whom Chili's stored private, personal
        information that was released as a result of the Chili's data breach disclosed in
        May 2018.

79.     Plaintiff also brings this action pursuant to NRS 41.600 and NRS 598.0923(3) on behalf

        of a subclass of all similarly situated individuals in Nevada ("Subclass 1"), defined as:

        All persons in Nevada for whom Chili's stored private personal information that
        was released as a result of the Chili's data breach disclosed in May 2018.

80.     Plaintiff also brings this action pursuant to Nevada state negligence law on behalf of a

        subclass of all similarly situated individuals in Nevada ("Subclass 2"), defined as:

        All persons in Nevada who purchased goods from Chili's with payment cards
        whose information was compromised as a result of the Chili's data breach
        disclosed in May 2018.

81.     Plaintiff also brings this action pursuant to Nevada state negligence per se law on behalf

        of a subclass of all similarly situated individuals in Nevada who were entitled to the

        protections of 15 U.S.C. § 45 and NRS 603A ("Subclass 3"), defined as:

> All persons in Nevada who purchased goods from Chili's with payment cards whose information was compromised as a result of the Chili's data breach disclosed in May 2018.

82.   Plaintiff also brings this action pursuant to Nevada state implied contract law on behalf of a subclass of all similarly situated individuals in Nevada ("Subclass 4"), defined as:

> All persons in Nevada who purchased goods from Chili's with payment cards whose information was compromised as a result of the Chili's data breach disclosed in May 2018.

83.   Plaintiff also brings this action pursuant to Nevada state quasi-contract law on behalf of a subclass of all similarly situated individuals in Nevada ("Subclass 5"), defined as:

> All persons in Nevada who purchased goods from Chili's with payment cards whose information was compromised as a result of the Chili's data breach disclosed in May 2018.

84.   Excluded from the Class and Subclasses are: (1) Chili's, Chili's' agents, subsidiaries, parents, successors, predecessors, and any entity in which Chili's has a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

85.   At this time Plaintiff does not know the size of the Class and Subclasses because the information is exclusively in the possession of the Chili's, but Plaintiff believes that the potential number of Class members is so numerous that joinder would be impracticable.

86. There are nearly 1,600 Chili's locations in the United States. Given the considerable volume of sales regularly conducted by Chili's at their Chili's stores, the Class likely numbers in the millions, if not more. The number of Class members can be determined through discovery, particularly investigation of Chili's' internal records.

87. All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach. These are questions of law and fact common to the proposed Class that predominate over any individual questions. The questions common to all Class and/or Subclass members include, but are not limited to:

    a.    Whether Chili's had implemented reasonable procedures to ensure that all third parties who accessed Plaintiff's and Class members' private credit information did so for a permissible purpose;

    b.    Whether Chili's engaged in consumer fraud by violating either NRS 598.0917(7) or NRS 603A with respect to Plaintiff and Subclass members;

    b.    Whether Chili's was negligent in permitting Plaintiff and Subclass members' private credit information to be

    c.    Whether Chili's violations of 15 U.S.C. § 45 and NRS 603A constituted negligence per se as related to Plaintiff and Subclass members;

    d.    Whether Chili's breached the implied contract it had with its customers when it accepted their payments without implementing proper security measures;

    e.    Whether Chili's was unjustly enriched when it accepted customer payments without implementing proper security measures;

    f.    Whether Plaintiff and Class members suffered damages as a result of Chili's' failure to conform its conduct to the law;

g.      Whether Plaintiff and Class members are entitled to statutory damages; and

h.      Whether Plaintiff and Class members are entitled to punitive damages.

88.   Plaintiff's claims are typical of the class, as Plaintiff's PII was compromised during the data breach.  All claims are based on the same legal and factual issues.

89.   Plaintiff will adequately represent the interests of the class and do not have an adverse interest to the class.  If individual class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.  A class action is the superior method for the quick and efficient adjudication of this controversy.  Plaintiff's counsel has experience litigation consumer class actions.

90.   Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final declaratory and injunctive relief with respect to the proposed Class as a whole.

### COUNT ONE: VIOLATION OF 15 U.S.C. § 1681, *et al*.
### Plaintiff and the Class

91.   This Count is brought on behalf of the nationwide Class.

92.   Based upon Chili's' failure to have reasonable procedures in place as required by 15 U.S.C. § 1681e(a), Plaintiff's PII was compromised.

93.   As a result of each and every willful violation of FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant

to 15 U.S.C. 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

94.    As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

**COUNT TWO: VIOLATION OF NRS 41.600**
**Plaintiff and the Subclass 1**

95.    This Count is brought on behalf of the Nevada Subclass 1.

96.    Chili's engaged in unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data breach, and permitting access to consumer reports by data thieves, for whom Chili's had no reasonable grounds to believe would be used for a proper purpose.  Plaintiff and Subclass members relied on Chili's' implied promise of data security when providing their PII to Chili's to purchase Chili's' goods.

97.    Chili's' conduct violated NRS 598.0917(7) because it constituted a tender of "goods advertised for sale . . . or tendering terms of sale or lease less favorable than the terms advertised," i.e., goods offered for sale by credit card without the corresponding promise that a consumer's PII would be kept reasonably safe from harm.  Chili's' violations of NRS 598.0917(7) constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

98.    Additionally, Chili's' violations of 15 U.S.C. § 1681e(a), NRS 598.0917(7) and NRS 603A also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3).  Chili's' violations of NRS 598.0923(3) constituted "consumer fraud" for

purposes of NRS 41.600(2)(e).

99.   Chili's engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Subclass members.

100.   As a direct and proximate result of the foregoing, Plaintiff and Subclass members have suffered injuries including, but not limited to actual damages, and in being denied a benefit conferred on them by the Nevada legislature.

101.   As a result of these violations, Plaintiff and Subclass members are entitled to an award of actual damages, equitable injunctive relief preventing Chili's to continue to violate the PCI DSS standards, as well as an award of reasonable attorney's fees and costs.

102.   Plaintiff and Class members also seek declaratory relief pursuant to 28 U.S.C. § 2201, specifically an order declaring that Chili's' data security procedures failed to meet the PCI DSS standards, which led to the exposure of Plaintiff and Class Members' PII in the data breach.

## COUNT THREE: Negligence
### Plaintiff and the Subclass 2

103.   This Count is brought on behalf of the Nevada Subclass 2.

104.   Chili's negligently breached its duty of care to its business invitees by failing to uncover and remedy the known risks which led to the data breach, thereby leading to the dissemination of Plaintiff and Subclass members' PII.

105.   Additionally, Chili's failed to inform Plaintiff and Subclass members of this heightened risk of harm.

106.   Plaintiff and Subclass members suffered damages as a result of Chili's' breach of its duty of care, and are entitled to an award of actual and punitive damages, as well as an award of reasonable attorney's fees and costs.

### COUNT FOUR: Negligence per se
### Plaintiff and the Subclass 3

107.   This Count is brought on behalf of the Nevada Subclass 3.

108.   Chili's conduct, as described above, violated 15 U.S.C. § 45 and NRS 603A.  The harm Plaintiff and Subclass members suffered was the type of harm these statutes was designed to protect.

Plaintiff and Subclass members suffered damages as a result of Chili's' violations, and are entitled to an award of actual and punitive damages, as well as an award of reasonable attorney's fees and costs.

### COUNT FIVE: Breach of Implied Contract
### Plaintiff and the Subclass 4

109.   This Count is brought on behalf of the Nevada Subclass 4.

110.   Chili's breached the implied contract it entered into with Plaintiff and Subclass members as described above.

111.   As a result of Chili's breach, Plaintiff and Subclass members are entitled to an award of actual damages and attorney's fees and costs.

### COUNT SIX: Unjust Enrichment
### Plaintiff and the Subclass 5

112.   This Count is brought on behalf of the Nevada Subclass 5.

113. As described above, Chili's unlawfully retained a benefit conferred on it by Plaintiff and Subclass members.

114. Chili's should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and Class members proceeds that it unjustly received from them. In the alternative, Chili's should be compelled to refund the amounts that Plaintiff and the Class overpaid for Chili's goods.  In either event, Plaintiff and Subclass members are entitled to an award of attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Chili's:

A. For an award of actual damages against Chili's for all allegations contained in Counts One, Two, Three, Four, and Five;

B. For an award of statutory damages pursuant to 15 U.S.C. §1681n(a)(1) against Chili's for the allegations contained in Count One for each eligible Class member and the Plaintiff;

C. For an award of punitive damages against Chili's as the Court may allow for the allegations contained in Count One pursuant to 15 U.S.C. 1681n(a)(2), and in Counts Three and Four under Nevada common law;

D. For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and 15 U.S.C. §1681o(a)(2) against Chili's for each incident of noncompliance of FCRA alleged in Count One, under NRS 41.600(c) as alleged in Count Two, and under Nevada common law as alleged in Counts Three, Four, and Five;

E. For an order declaring that Chili's' conduct failed to adhere to the PCI DSS standards, as alleged in Count Two;

F. For a preliminary and permanent injunction prohibiting Chili's from continuing to violate the PCI DSS standards as alleged in Count Two; and

24

G.  For all other relief this Court may deem just and proper**.**

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 30, 2018

Respectfully Submitted,

<u>/s/ David H. Kreiger</u>
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129

*Counsel for the Plaintiff and the Class*